IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 8:09CR426 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | FINDINGS AND |
| TOBY L. MCCUNN, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This case is before the court on the defendant Toby McCunn's Motion to Suppress Statement (#15). Hearing on the motion was held January 13, 2010 and the Transcript of the hearing (#24) was filed on February 3, 2010, at which time the motion was deemed submitted.

McCunn moves the court for suppression of any statements made during his October 20, 2009 contact with the Omaha Police Department, specifically alleging that he was not advised of his *Miranda* rights prior to making incriminating statements and that statements made occurred in violation of his Fifth and Sixth Amendments rights as well as his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

The government does not dispute that the statements in question were made while McCunn was in police custody. However, the government alleges the statements were made after McCunn was advised of his *Miranda* rights, waived those rights, and agreed to speak with law enforcement.

**FACTUAL BACKGROUND**

Officer Paul J. Milone testified that he is an officer of the Omaha Police Department assigned to the narcotics division. On October 20, 2009 he was involved in a reverse sting operation which he described as the utilization of a cooperating witness to sell narcotics

to customers, leading to the arrest of those customers (3:19-24).  The reverse sting involving McCunn occurred in the cooperating witness' apartment and was monitored and recorded on an audio and video surveillance system (Exhibit 101).

Milone testified that after McCunn entered the apartment and engaged in a conversation regarding narcotics with the cooperating witness, McCunn and the cooperating witness agreed on the price for the narcotics that were going to be purchased, the money was counted out for the purchase, and McCunn took possession of the narcotics (5:8-13).  After McCunn took possession of the narcotics, the decision was made by law enforcement to arrest McCunn and Milone was designated to transport McCunn to the Douglas County Corrections Center (5:9-6:1).  During transportation Milone observed that McCunn was very pleasant and very talkative (6:2-6).  Because McCunn began asking specific questions about his case and what was going to happen to him, Milone determined that he should advise McCunn of his *Miranda* rights.  As Milone has given *Miranda* rights hundreds of times, he gave the rights to McCunn verbally from his recollection and after each of the six questions asked, he paused and asked McCunn, "do you understand, yes or no" (7:7-8:3).  After giving the warnings, Milone asked McCunn, "knowing your rights in this matter do you want to talk to me about the case, yes or no?"  McCunn responded yes (8:3-5).  Milone noted that prior to advising McCunn of his *Miranda* rights, he did not ask McCunn any questions (6:24-25).

Milone testified that during his contact with McCunn in the cruiser, McCunn did not appear to be under the influence of alcohol or drugs as there were no outrageous signs that he was impaired.  Milone described the signs that he was looking for as profuse sweating, slurring, falling asleep, or appearing to be drugged (8:12-19).  Milone noted he

made no threat or promise to McCunn and, and McCunn waived his rights. The conversation between McCunn and Milone in the cruiser was not recorded and there were no witnesses to the conversation.

On cross-examination Milone testified that during the reverse sting operation in the apartment, McCunn appeared a little bit nervous (16:24-17:1). Milone estimated that time between McCunn's arrest and their departure for the Douglas County Corrections Center was about ten minutes tops (17:23-18:3), and that the drive from the apartment to the station was about fifteen minutes (20:12-17).

## LEGAL ANALYSIS

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). The court must look to the totality of the circumstances in determining whether or not the statements were voluntary. *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157, 176 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

"A *Miranda* warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1999) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). However, "[i]nterrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (*quoting Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

"*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989), *cert. denied*, 496 U.S. 909 (1990) (quotation omitted); *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997).

Regarding the statements McCunn made in Officer Milone's car, I find that McCunn was advised of his constitutional rights pursuant to *Miranda* and that there is no evidence that McCunn did not understand the advice of rights.

Even though McCunn was advised of his *Miranda* rights, the court must examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity. In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne. *United States v. Wilson*, 787 F.2d 375, 380-81 (8th Cir.), *cert. denied*, 479 U.S. 857 (1986). Coercive police conduct will render a confession inadmissible. *Blackburn v. Alabama*, 361 U.S. 199 (1960). Coercive police pressure is a predicate to the finding that a confession is not voluntary and violates the accused's due process rights. *Connelly*, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The court must consider the totality

of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *Schneckloth*, 412 U.S. at 225-26.

"Trickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises." *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001) (citing *Frazier v. Cupp*, 394 U.S. 731, 739 (1969)); *see also Oregon v. Elstad*, 470 U.S. 298, 317 (1985) (citing *Frazier v. Cupp*: "[T]he Court has refused to find that a defendant who confesses, after being falsely told that his codefendant has turned State's evidence, does so involuntarily."); *see generally* William E. Ringel, Searches and Seizures, Arrests and Confessions § 25:8, SSAC § 25:8 (Westlaw Oct. 2009).

The defendant's position is that the DVD depicts McCunn as nervous, excited, pacing the apartment, paranoid that he had been followed, verbose, and potentially under the influence of narcotics (25:23-26). I have viewed the DVD and I conclude that McCunn's actions as depicted on the recording do not demonstrate signs of impairment. Nor do they depict a person who, based upon either a physical or mental condition, was incapable of making a legal and fully informed waiver of his *Miranda* rights.

I find the testimony of Officer Milone to be credible, that McCunn was given his *Miranda* warnings, that McCunn understood his rights, and voluntarily agreed to speak with Milone.

## RECOMMENDATION

In summary, I find McCunn was given his *Miranda* rights. He freely, voluntarily, knowingly, and intelligently waived those rights, and voluntarily gave a statement to law enforcement.

For the above reasons,

**IT IS RECOMMENDED** that the defendant's Motion to Suppress Statement (#15) be denied.

A party may object to the magistrate judge's findings and recommendation by filing an "Objection to Magistrate Judge's Findings and Recommendation" within 14 days after being served with the findings and recommendation. The objecting party must comply with all requirements of NECrimR 59.2.

**DATED February 5, 2010.**

                                              **BY THE COURT:**

                                              **s/ F.A. Gossett**
                                              **United States Magistrate Judge**